Your Honors, may it please the Court, Ross Fulton for the appellant, Malcolm Wiener. A jury found that AXA Insurance negligently entered false information about Mr. Wiener's health into an insurance database and returned an $8 million verdict for Mr. Wiener. Having lost, AXA is trying to repackage merits defenses that AXA already waived into a jurisdictional box. The District Court's order made at least three key errors in deciding it lacked subject matter jurisdiction, any one of which requires reversal of the decision below. First, that the choice of law issues weren't already waived after trial. Second, that the Supreme Court's Bell and Steele tests shouldn't be used if subject matter jurisdiction was affected. And third, that Connecticut law should apply to the case and that the Connecticut insurance statute was anything other than a potential defense that AXA had failed to timely raise. The District Court ruling here would have terrible consequences for the finality of jury verdicts in diversity jurisdiction cases in this circuit and invite losing defendants to bring extraordinarily late choice of law arguments couched as jurisdictional motions after waiving these arguments through the trial that they lost. Virtually all diversity jurisdiction cases will have choice of law issues by their very nature. The District Court's ruling would allow losing defendants to strategically lie in wait on choice of law issues until after they lose at trial. Post-verdict here, AXA moved to dismiss for lack of subject matter jurisdiction, claiming for the very first time that a North Carolina statute provided an exclusive remedy for Mr. Wiener's claims. But that statute explicitly does not apply because it only applies to insureds who are North Carolina residents. Mr. Wiener is a resident of Connecticut. AXA's post-verdict arguments are waivable and were waived by this post-verdict time period. North Carolina law was used throughout the case by both parties and by the court. And as noted in our brief, every circuit says choice of law can be waived. And certainly by the time there's a jury verdict, it is waived. This case was originally filed in North Carolina State Court, where AXA's office that submitted the false information to the MIB database was located. AXA removed the case to federal court based on diversity of citizenship, and both parties litigated the case all the way through jury trial based upon North Carolina state law. If they hadn't removed the case, would the subject matter jurisdiction issue have arisen under North Carolina law? No, Your Honor. Under North Carolina law, we don't contend that it would have. Suppose North Carolina had decided it should apply Connecticut law. Would the subject matter jurisdiction borrow North Carolina State Court from hearing the case? I know, Your Honor. I think that goes to the third point, which is that the Connecticut statute in question does not actually provide an exclusive remedy in the same way that the workers' compensation statute cited by AXA did. Number one, here, there's no exclusive administrative form for this relief. In fact, the Connecticut insurance statute provides for a judicial form for these very types of disputes. And it provides for monetary relief for private parties under multiple circumstances, including the circumstances specifically pled in the complaint filed in North Carolina State Court here. Connecticut statute section 38A-996, which was the immunity provision, says that even if AXA had otherwise complied with the Connecticut insurance statute, even assuming that it did apply to this case, if they turned over false information about Mr. Wiener with malice, that is totally accepted from the Connecticut statute. In this case, in the original complaint, Mr. Wiener pled that these statements were made with malice. This is in the joint appendix at page 38. And that allegation is incorporated by reference into the negligence claim that falls below it in the complaint. So under circumstances exactly as those pled here, this dispute would not fall within the Connecticut statute at all. And because the Connecticut statute allows for a judicial remedy and money damages for injured parties like Mr. Wiener, we do not believe that this affects subject matter jurisdiction, and that instead what AXA is trying to do is take what could have been a plausible affirmative defense to claim either immunity or statutory preemption. Let me touch on something that troubles me, and that is that during the pretrial activity, the motions for summary judgment and the trial briefs and the jury instructions and post-trial motions, it seems to me that AXA was citing North Carolina law and was all in on North Carolina law being the governing standard of law. And then once the jury turned in an adverse verdict, they dramatically switched and said, no, the North Carolina choice of law requires that Connecticut law be the governing law. But they litigated the whole case on North Carolina law. And if the jury had returned a verdict in their favor, I'm willing to bet that they would be screaming up and down that North Carolina law was the governing law, that choice of law questions are waivable, that they don't ask jurisdiction, that they are affirmative defenses. And so I'm left with the conclusion that there may have been some really bad sandbagging going on, that we would open the door for some really unfortunate sandbagging in which people just hold their choice of law questions in reserve. And if the verdict goes against them, then they resuscitate the choice of law in a completely different position than they took throughout trial. You know, that's a hard thing to ask a district judge which had gone through a very fine trial. And all of a sudden they're saying, well, this all went for naught. There just can't be. Your Honor, I couldn't agree more. And AXA, as you pointed out, tried this case under North Carolina law throughout. It wasn't just in the motions practice. It was also in their proposed jury instructions. They proposed that the court instruct the jury on North Carolina law. And the jury was, in fact, instructed on North Carolina law. It wasn't until they lost, post-verdict, that they first brought up the fact they believed maybe some other law ought to apply, and maybe that law ought to be found to be jurisdictional now that they knew that they had waived the possibility of raising it as an affirmative defense, which preemption and immunity are. Am I correct? I think I am because I've read a number of these cases. But practically every time it comes up, every circuit in the country has said that the choice of law question is a waivable one. You're correct, Your Honor. Every circuit has found that. Yeah, and we've held that as well. And so I wonder if we'd be creating a circuit split with ourselves, not just on the short end, but on the solitary end. And as the Supreme Court has said, you'd be engrafting another condition on diversity jurisdiction. These parties are diverse. That's correct. One of them is a citizen of New York, I guess, and one of them is a citizen of Connecticut or what have you. They're diverse, and that's the jurisdictional question. Your Honor, we agree. The parties are diverse. There's more than $75,000 at issue, and no one has ever disputed that in this case. The first time that this comes up, and, Your Honor, in the Fourth Circuit it was the Balencia case versus General Motors that found that choice of law. Now, did they raise at any point during trial, did Axler raise at any point during trial, that Connecticut law is the one that controls and that Connecticut law, the exclusive remedies were statutory? No, Your Honor. Did they make that argument that the exclusive remedies were statutory? No, Your Honor. Never. Not until post-verdict. Not until post-verdict. Post-verdict they argued that North Carolina law deprived the court of subject matter jurisdiction, and then all of a sudden you apparently mentioned the Connecticut statute, and the judge latched on that, and so I guess did the other side. Well, Your Honor, I would agree almost with what you said. I would disagree that we were the ones who raised choice of law as a possibility. You didn't raise that. You just said even if the Connecticut law applied. Your Honor, it was even different than that. We were using it by analogy to try and explain the North Carolina statute because they came from the same model act. There's very little case law out there interpreting the North Carolina statute, so this was just by analogy saying here's how another state's similar law would operate and why we should still win, we think, is what we were telling the district court. I would point out the district judge didn't think that we raised choice of law either, despite what AXA says in its response brief in this case. In the order that's up on appeal here, the district court states that it is taking up this choice of law analysis because AXA raised it in its reply brief. That's the joint appendix at page 998, citing that the judge says, I'm bringing this up due to the newly raised possibility that some other state law might apply, and he cites to docket number 140, which is AXA's reply brief in support of its motion to dismiss. So that's the first time that choice of law came up as even a possibility, not only post-verdict but in a reply brief in support of a motion to dismiss for lack of subject matter. Did the party stipulate that North Carolina law was the governing law? Your Honor, there's no formal stipulation in the record. There's nothing filed on the docket. However, at some point, the parties have agreed that North Carolina law applies. And, for example, rule of civil procedure 51, which is what this court cited in Balencia, if you don't object to the submission to the jury within certain prescribed timelines, then you've waived it. And in this case, not only did AXA not object to the jury being instructed on North Carolina law, they proposed it. At bottom, Mr. Fuller, you're saying that the district court mistakenly thought that because Connecticut law might apply, it mistakenly thought that was jurisdictional as opposed to just a choice of law question, correct? Correct, Your Honor. First, they mistakenly undertook this choice of law matter. We would contend that even if they were proper in doing that, which they weren't, that the Connecticut statute itself is not jurisdictional because it doesn't provide the sort of exclusive remedy that is found in the other cases cited by AXA from this court where an exclusive remedy was found to affect subject matter jurisdiction because there is no- We've got our own precedent and there are precedents from other circuits and there are strong signals from the Supreme Court that say, subject matter jurisdiction is not ousted by choice of law analysis. This choice of law analysis is something we debate in our cases all the time and it doesn't oust subject matter jurisdiction. Our cases say that. We agree, Your Honor. That's absolutely correct. And I think here, it's really, it's not just the danger in this case, but it's the danger in future cases that we would see in the Fourth Circuit if this order were to stand because we're going to be facing any diversity jurisdiction case in the Fourth Circuit is going to have a choice of law issue. These tort cases with Lex Loci being applied under different states' choice of law provisions, they're complicated. And it would allow a losing defendant to lie in wait, to sit back and wait to see, let's see if we win on the merits of the forum states law. And if we lose, we'll get a second bite at the apple anyway. We'll get to come in and say, well, that state's law shouldn't have applied. This other state's law should have applied. And we'll find some statute that says that this shouldn't be a possible remedy for the plaintiff. Therefore, it's jurisdictional. Therefore, I can bring this defense up. But that's what these are. These are merits defenses that AXA is bringing up way, way too late. They had every opportunity over the years and years and years that this case was ongoing to raise the North Carolina statute. As a whole, the appellate's position here has the potential of just setting it not a great deal of good trial work. That's right, Your Honor. It all goes to nothing. Yes, it's very unfortunate this case went to a jury. It was, I believe, the first jury trial in Charlotte in the federal court in the Western District of North Carolina post-pandemic. And that work was just simply thrown away. Your Honor, I see I'm out of time unless the panel has any further questions. Thank you, Mr. Fulton. Mr. Sawcheck. Thank you, Your Honor. Good afternoon, and may it please the Court. I'm Matt Sawcheck. Two points show that the district court was right to dismiss this lawsuit. First of all, choice of law is not a freestanding issue here, as the earlier discussion suggested. It's connected with subject matter jurisdiction. The district court explicitly said on page 1013 of the joint appendix, the court needed to choose which state statute to apply in order to engage in jurisdictional analysis. That was the same pattern this court followed in the Banks case and in the Demetrius case, where the court needed to choose which state statute to apply in a 12-B case. But weren't you choosing, in a sense, by the fact that you were all in on North Carolina law? I mean, you read your summary judgment motions and your proposed jury instructions, and you were all in on North Carolina law. Your Honor, you're certainly correct that the trial record up to the point of the post-trial motions is citing North Carolina law. There really was not any choice of law debate going on between the parties. But you assumed that North Carolina law applied, did you not? We certainly took that position in our earlier papers. The second point about choice of law I'd make, Your Honor, is— Well, but how can you back off of it? Because it's connected with subject matter jurisdiction, just as it was in the Banks case. But, I mean, just to be perfectly blunt, counsel, aren't you trying to pull a fast one? No, Your Honor. Yes, and holding back the choice of law issue until you see which way the jury verdict goes. Your Honor, that is not what happened here. The district court explicitly said at page 1005 of the joint appendix, everyone was inadvertent to these insurance privacy statutes. Secondly, I'd point out the first person to mention Connecticut law applying was not AXA. It was Mr. Wiener on pages 963 to 72 of his post-trial brief. He mentioned it 12 times. And contrary to what my friend suggested, several times cited it in support of affirmative law. Well, but that doesn't get you anywhere, because even if one party is mentioning North Carolina law and another party is even if assuming that they are talking about Connecticut law, that's just something for debate in the case. The point is the jurisdiction is established. The plaintiff is a citizen of Connecticut and AXA is of New York, and so you have diversity here. Your Honor, that is an analysis that overlooks external challenges to diversity jurisdiction, such as the probate exception, such as the domestic relations exception, such as, most importantly here, exclusive state remedies. If citizenship and amount of controversy were enough, this Court's decisions in Evans, Banks, Scott, and Balfour Beatty would all be overruled. Those were all situations where the mechanical elements of 1332 were satisfied, but there was an external challenge to subject matter jurisdiction because of these exclusive state remedies. Another point on choice of law is very important. There is no actual conflict between Connecticut law and North Carolina law here. The choice of law issue here is a false conflict situation. Both state statutes have the same exclusive remedy provisions. Mr. Wiener does not deny that. Well, you would agree that the parties can stipulate or can assume that the choice of law issue, and generally courts uphold that assumption, whereas North Carolina in this case was the law of the forum state. That would seem to be perfectly reasonable, and normally courts can uphold that kind of thing where the parties want to litigate under a certain state law. If that choice is completely unreasonable, like the Code of Hammurabi, then there would be a question on the part of the Court, but why would there be a question here when North Carolina is the place of the forum state? That's a reasonable choice. It is, but it's not a stipulation, Your Honor. A stipulation is an active... Well, maybe so, but when your briefs are loaded with discussions of North Carolina law and you're not protesting that Connecticut law should apply, haven't you waived the issue and don't our cases say that the choice of law question is waivable? And this Court's cases also draw a distinction between waiver and forfeiture. Here, there's no active waiver alleged, so at most it would be a forgivable forfeiture under the Alano line of cases. But, Your Honor, two points about choice of law... Hold on a minute. How do you get around our Balencia precedent? Again, that is not a situation where choice of law was hooked up to subject matter jurisdiction. The District Court here explicitly stated on page 1013 that it chose the law of Connecticut only as a step along the way. That's the very same thing that happened in Banks. It's the very same thing that happened in Demetrius. When we have one of these state external remedy schemes that needs to be considered, necessarily one statute, one state has to be chosen. And again, my friend, I think, has no answer to the false conflict issue. There is no difference between these exclusive remedy statutes in the two cases. Now, my friend and his client try to come up with one by arguing here that the scope provisions of the two statutes create a conflict. But that argument has been... Well, if it's waiver on one hand or if it's forfeiture on the other hand, what difference does it make? Waiver is not as easily overlooked as forfeiture is. Here this would be a forgivable forfeiture. But again, I want to emphasize the point. I think the discussion is treating choice of law as if it were a freestanding issue. It's not freestanding. And there's a false conflict. Now, to try to come up with a true conflict, Mr. Wiener is arguing for the first time at the reply stage that the scope statutes exempt him from the North Carolina. Let me say one thing to try to raise a practical point. AXA dealt terribly with this plaintiff. And the jury understood that. But this life insurance company made a total negligent finding that this man suffered from four serious medical conditions. And they humiliated him. And they embarrassed him by sending out a report that he suffered from a cognitive disorder when he suffered nothing of the kind. And on top of that, this was done without ever speaking to plaintiff's primary care physician or with follow-up tests. And this is treating another person shabbily. He not only had his name besmirched, but he was rendered uninsurable or, in the alternative, insurable at a prohibitive and exorbitant price. And the jury understood it. And it was a good trial, and it was well conducted by an able trial judge. And now, after all of that is done and justice was achieved, we are supposed to believe that a party who has litigated the case under North Carolina law can all of a sudden pull out of its back pocket a choice of law issue and say that, whoops, after all, Connecticut law applies and everything you did over this trial. It just counts for nothing. And this individual who thought he had achieved justice had achieved nothing of the sort. And that is just not the way that the judicial system should work. It's not only unfair to individuals. It puts us on the short end, the solely end of the circuit split with respect to choice of law rules, and it engrafts additional conditions on subject matter jurisdiction and contradiction to what the Supreme Court has indicated. And I don't get it. I think it's a prescription for sandbagging. And it doesn't sit well with me. And I don't like what happened to this person. I don't like what happened to him at all. I understand your concerns, Your Honor. But the same district judge who oversaw the trial himself recognized the lack of subject matter jurisdiction here. So you say that under North Carolina law, there was no subject matter jurisdiction because the North Carolina Insurance Commission or whatever was the exclusive remedy for this individual. Is that right? Ultimately, the district judge decided that...  It would be true under both states' law. Okay. So let's just assume that North Carolina law applied here. Suppose there was a defense under North Carolina law that workers' compensation should provide a benefit in this case, a different kind of diversity case. Can you waive that? No. Under this Court's teachings in Evans and other cases, the displacement of tort claims by the exclusive state remedies... But can you waive it if you go to trial? Suppose we had what we had here, they went to trial, and then they said, well, sorry, we lost, but it really was covered by workers' comp. No, Your Honor, it's a 12B1 problem. I mean, that's the consistent holding of a long... I'm sorry, Your Honor. Go ahead. Consistent holding of a long line of cases extending up to two weeks ago in Ziegler. Just two weeks ago in Ziegler, ultimately there were state law issues that prevented the 12B1. But this Court recognized that exclusive state remedies are a 12B1 issue even there. Long line of cases. Evans, Banks, Scott, Balfour Beatty, Ziegler, Demetrius, all of these cases treat these exclusive state remedies as an issue. And, Your Honor, to your question, again, no conflict here. The same exclusive remedies apply under North Carolina and Connecticut law. I want to not neglect the point that Mr. Wiener has this true conflict argument he's trying to come up with fails for a number of reasons. First, it is not treated in his opening brief. That puts us within the Al-Hamdi case where, by his own admission in the opening brief, this is a true conflict. Second, to decide which state's law to apply, of course, we're within Claxon. The North Carolina law system would follow the explicit text of the statutes. One of the two statutes, Connecticut, applies to Connecticut residents. The North Carolina Supreme Court has taken that approach in Braxton. The North Carolina Court of Appeals has taken that approach in First Union versus Brown. Well, do you agree with Judge Wilkinson that you can waive a choice of law question? Not, Your Honor, when it's connected with a jurisdictional analysis. But ordinarily you can? Certainly, if it is freestanding. But this case is nothing of the kind. But in your theory, it would almost always be connected with subject matter jurisdiction. That's the problem. You would never recognize a freestanding choice of law question if this isn't a free. I don't understand how we're going to litigate this elusive phrase as to which choice of law questions are connected to subject matter jurisdiction and which choice of law questions are not. That just introduces another level of uncertainty and complexity in the whole thing. The point is the choice of law question is just like anything else. It is not jurisdictional by its very nature because it does not speak to the diversity of citizenship between the parties. If you have a problem with the forum, you cannot stipulate to it. You can raise a question of personal jurisdiction. You can raise a question of forum nonconvenience. You can do all those things. But what you can't do is sit on your hands and let the case go forward under North Carolina law and then say, whoops, after the verdict goes against you. Here we are. I don't see what the problem is with reinstating these jury verdicts. The jury, in my judgment, had ample reason to rule the way it did. And I just don't see any problem with validating what the jury did. There was jurisdiction. The choice of law issue was waived. And it's not connected with subject matter jurisdiction. Choice of law rules don't oust subject matter jurisdiction. They simply don't. Your Honor, I would ask the court to take another look at Banks and Demetrius as examples of the court, in a 12B1 setting, having to choose which state's law applies. That's exactly what the district court did here. To the court's question about the facts of the case, a thing that might be helpful to the court is the district judge's own summary judgment opinion, pages 226 to 229. Code by code, the court goes through the MIB codes in question and finds a basis for them because all of them were qualified or evidence of or the like. Ultimately, this case was tried on a much narrower theory of sort of a process problem with the way these records were reviewed. So far, nothing in our exchange has really said anything to cast doubt on the false conflict issue. Again, these two statutes, Connecticut and North Carolina, they both emanate from the same model act. I'd say this is a case, fundamentally, where it calls on the court, although these late 12B1 situations are difficult, this is a rare situation where you have exclusive state remedies applying. But the dictates of Rule 12... Do you realize that what you just said essentially gives the states that have state laws that exclude common law remedies, you're giving those states the authority to divest federal courts of subject matter jurisdiction. You know, that's investing in state courts a remarkable authority over federal court jurisdiction to say that whenever a state excludes common law remedies and has exclusive statutory remedies, that you can therefore say to a federal court, well, you don't have jurisdiction. That can't be. I mean, that puts state courts in the driver's seat in a way that the Supremacy Clause and the Congressional Grant of Jurisdiction and Diversity, it goes against what the Supreme Court has said. It said, don't pile condition upon condition upon condition upon jurisdictional grants. If there's diversity of jurisdiction, if there's diversity of citizenship, there's jurisdiction. You learn that in the first class of the first year in civil procedure. Your Honor, those arguments would result in the overruling of a long line of cases, the Evans line of cases involving exclusive state remedies. In terms of vertical choice of law on jurisdictionality, the court might want to take a look at Section 3602.1 of Wright and Miller and its own decision in Shante, the 1965 case that Mr. Wiener cites. This is probably the fountainhead case where the court discusses why state statutes like the South Carolina door-closing statute can oust federal subject matter jurisdiction. Lastly, Your Honors, this is a hard case jurisdictionally, a lot like the Capps case a few weeks ago where there was a late discovery there by this court of a subject matter jurisdiction issue, but the dictates of Rule 12.H.3 are clear. The district court recognized that, and we'd ask that the district court's decision be affirmed. Can I just ask one question real quick? Yes, Your Honor. At the close of the case, were you entitled to the jury being told that there was a preclusive provision in the statute that wouldn't allow this recovery as a matter of law? Were we entitled to have the jury told that? Yeah, told that, or argued to the court. Your Honor, I think that everyone... You were entitled to argue that, right? It could have been argued at an earlier point, but the district judge correctly realized that everyone, the court included, overlooked this statute, but the district court also held correctly following the Evans line of cases that it was a subject matter jurisdiction problem. So, I mean, there's no doubt... Well, had it been raised earlier, you say it's jurisdiction, but couldn't the court just have applied Connecticut law and kept the case? Your Honor, the court could have, but everyone was inadvertent to the subject matter. So it wasn't jurisdictional just because North Carolina was raised at all. You could have said, wait a minute, Judge, we're raising this, it's Connecticut. If it was jurisdictional, then the court would have to just dismiss the case. Instead, the court said, oh, now we know the right law, let's apply Connecticut, correct? Your Honor, not quite. Why not? Because the issue here is not choice of law on a freestanding issue. What is jurisdictional here is the effect of the state exclusive remedies statutes, and those have been recognized by this court as a problem of subject matter jurisdiction. There is a false conflict here. Nothing in our discussion or from my friend has cast any doubt on the point that the North Carolina and Connecticut statutes emanate from the same model act. They have the same exclusive remedies. If you compare Section 995E and 996 of the Connecticut statute with Sections 105 and 110 of the North Carolina statute, you're going to find effectively the same terms. That's why conflict of laws is not a real issue here, and conflict of laws is not a freestanding issue here because of its intimate connection with subject matter jurisdiction, as in Banks, as in Demetrius. This is a hard situation where a subject matter jurisdictional problem came up late, as in caps, but the dictates of Rule 12H3 are clear. And again, we're the appellee here. The district court correctly recognized that. It correctly put the choice of law issue in its connection with subject matter jurisdiction, and we'd ask that its decision be affirmed. Thank you. Thank you, Your Honor. Thank you, Your Honors. Very briefly, the exclusive state remedies statutes and cases that AXA has just referenced are all workers' comp cases that have created by state law an exclusive administrative forum that deny any court, state or federal, jurisdiction over those disputes. This Connecticut statute, by turn, actually creates judicial remedies and contains exceptions, including an exception that we specifically pled in this complaint that they passed along false information about Mr. Wiener with malice, such that even if one of these statutes were timely raised by AXA, Mr. Wiener had pled around that in the complaint and would have had an opportunity to challenge these affirmative defenses. This is a merits dispute, not a jurisdictional issue. There is no false conflict here. Mr. Wiener is not a North Carolina resident. That statute only applies to North Carolina residents. I would also note that this difference between the exclusive forum and an exclusive remedy in court is an important one. As the First and Second Circuit both pointed out, in cases we cited, Violette and Sachs, building off the Supreme Court's ruling in International Longshoremen v. Davis, that there is a difference here between an exclusive forum where no court has jurisdiction versus a statute that provides a judicial remedy, like the one that we're talking about here. AXA also tries to point out a difference at some level that I don't fully understand between waiver and forfeiture. Those cases are all based upon criminal law and criminal procedure. I'm sure that AXA is not taking the position that they can't waive an affirmative defense in a civil case that they never raised until after they lost a jury trial. This is exactly like the Balencia case, where this circuit found that choice of law is waivable if not raised in a timely fashion. For those reasons, unless the panel has any further questions, we would ask the Court to reverse the District Court's order on the motion to dismiss and reinstate the jury verdict in this case. All right. Thank you, Counsel. Thank you all. We appreciate you being here. We can't greet you like we normally do, but know that very much we appreciate your arguments in this case. We wish you well and be safe. The Clerk will ask you to adjourn the Court for today. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Roger L. Gregory, J. Harvie Wilkinson III, John A. Gibney Jr.